Dear Representative Renegar:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Is an emergency order of detention required before a person believed to be in need of mental health care or treatment can be involuntarily admitted to a hospital or other appropriate facility?
 2. If not, under current law what is the proper procedure for emergency custody and detention of a person believed to be in need of mental health care or treatment?
 3. Who has responsibility for transporting such a person to and from an appropriate care facility, and can the salary or wages of the transporting officer be reimbursed?
In essence, you ask for an explanation of the current procedure pertaining to protective custody and emergency detention of a person believed to be in need of mental health care, and whether an emergency order is needed as a condition of involuntary admission of such person to a hospital or other appropriate facility for evaluation and treatment as necessary. Further, you ask who has responsibility for transporting such a person to and from an appropriate facility. To fully answer these questions, a brief summary of the statutory provisions on custody and detention of persons requiring treatment is needed.
 SUMMARY OF CURRENT STATUTES AND PROCEDURES
For purposes of this Opinion, provisions of 43A O.S. 2001 Supp. 2007, §§ 1-101 — 12-105 are referred to collectively as the "Mental Health Law." *Page 2 
1. Custody and Emergency Detention
"Any person who appears to be or states [he or she] is mentally ill, alcohol-dependent, or drug-dependent to a degree that immediate emergency action is necessary may be taken into protective custody and detained" under provisions of the Mental Health Law. 43A O.S. Supp. 2007, § 5-207[43A-5-207](A). A "person requiring treatment" is defined at Section1-103(13) of Title 43A as a person who has either a mental illness or a drug or alcohol dependency and represents a risk of harm to self or others. The term "risk of harm to self or others" includes someone who, because of mental illness or substance dependency, is unable to attend to his or her own basic physical needs such as food or shelter and who must be attended to in order to avoid serious harm. Id. § 1-103(18)(e). The Mental Health Law also refers to a person requiring treatment as a "consumer." Id. § 5-208(A)(1).
Any peace officer who reasonably believes someone is a "person requiring treatment" to a degree that immediate emergency action is necessary, "shall take the person into protective custody" and "shall make every reasonable effort to [do so] in the least conspicuous manner." Id. § 5-207(B) (emphasis added).
When a peace officer takes such a person into protective custody, the officer must prepare a written statement indicating the basis for his or her belief in the need for treatment. Id. § 5-207(C). If the peace officer takes someone into protective custody based on the statement of another person, the person making the report must sign a written statement under pain of criminal sanctions. Id. "If the person is medically stable, the officer shall immediately transport the person to the nearest facility designated by the Commissioner of Mental Health and Substance Abuse Services ["Commissioner"] as an appropriate facility for an initial assessment ["Assessment Facility"]." Id. § 5-207(D). If, after an initial assessment by a healthcare professional "it is determined that emergency detention is warranted, the officer shall transport the person to the nearest facility, designated by the Commissioner as appropriate for such detention ["Detention Facility"] that has bed space available."Id. § 5-207(D); see also 43A O.S. 2001, § 5-206[43A-5-206](2). The process for designation of an Assessment Facility or a Detention Facility by the Commissioner is found in the Department of Mental Health and Substance Abuse Services ("DMHSAS"), Emergency Detention and CivilCommitment Manual 2007, available at
http://www.odmhsas.org/2007Rules/2007%20ED %20Manual.pdf (to be discussed later). If the director of the facility (which we conclude means either the Assessment Facility or the Detention Facility) determines the person is not medically stable, "the officer shall transport the person to the nearest hospital or other appropriate treatment facility." 43A O.S. Supp. 2007, § 5-207[43A-5-207](D); see also 43A O.S. 2001, § 5-206[43A-5-206](2).
Once the person is medically stable and is delivered by the officer to the nearest Detention Facility, such facility must conduct an initial assessment (see § 5-206(2) defining "initial assessment") within 12 hours to determine if emergency detention of the consumer is warranted. 43A O.S. Supp. 2007, § 5-208[43A-5-208](A)(1). If the licensed mental health professional at the facility determines emergency detention is not
warranted, a peace officer must immediately return the consumer either to his or her home or to the point where he or she was taken into custody.Id. § 5-208(A)(2).
If, upon examination, the healthcare professional at the facility determines that emergency detention is *Page 3 
warranted, the healthcare professional must "prepare a statement describing the findings of the examination and stating the basis for the determination." Id. § 5-208(A)(3). Thereafter, "the consumer shall be detained in emergency detention for a period not to exceed seventy-two (72) hours, excluding weekends and holidays, except upon a court order authorizing detention" for a different period pending a hearing on commitment of such person. Id. At this point, the remaining provisions of the Mental Health Law pertaining to involuntary commitment apply.See, e.g., id. §§ 5-208(D); 5-410; 5-415.
The reader is referred to the Emergency Detention and Civil CommitmentManual 2007 published by DMHSAS [hereinafter Manual] for a much more extensive discussion of the emergency custody and detention process.Available at http://www.odmhsas.org/2007Rules/2007%20ED%20Manual.pdf. Appendix "D" to the Manual, captioned Flow Chart for Adult ED [emergencydetention] Process is particularly recommended for a birds-eye view of applicable processes and procedures. Id. at 42-43.
2. Reimbursement of Transportation Costs
In Attorney General Opinion 06-29, we discussed procedures for reimbursement of law enforcement agencies or officers for costs incurred in connection with the emergency protective custody and detention process. There, we concluded that Section 1-110 of Title 43A only authorizes DMHSAS to reimburse peace officers for travel expenses incurred in transporting individuals for protective custody, mental health evaluation and emergency detention to the extent authorized by the State Travel Reimbursement Act, 74 O.S. 2001 Supp. 2005, §§ 500.1 B 500.37. Id. at 196-97. In other words, mileage and other actual incurred transportation expenses may be reimbursed by DMHSAS but not the salary or wages of the officer.
 EMERGENCY DETENTION ORDERS
While certain specified paperwork is required in the emergency detention process, we conclude that an order of the court for emergency detention is not required as part of the emergency detention process provided for in the Mental Health Law.[1]
 Section 5-102 of the Mental Health Law provides: *Page 4 
 No person shall be accepted into any facility without the use of the properly executed official forms. The properly executed order to hospitalize or the order of admission shall be full and sufficient authority and protection to the executive director or the person acting as such in the absence of the executive director for receiving and detaining in the hospital the person named on the form.
Id. While the above statute is less than clear as to what "properly executed official forms" are included, the statute makes no reference to a court order. As earlier discussed in this Opinion, an officer taking an individual into protective custody and delivering him or her to a Detention Facility must, under Section 5-207(C), prepare a written statement indicating the basis for the officer's belief that the person detained is a person requiring treatment and the circumstances under which the officer took the person into protective custody. Our conclusion is that the "official forms" referred to above in Section 5-102, in addition to any hospital admission forms, must include a copy of the signed written statement of the officer delivering the consumer. Other forms, if any, that may be required by DMHSAS or the Commissioner are to be found in the DMHSAS' Manual. See Manual, Apps. B, F, available at
http://www.odmhsas.org/2007Rules/2007%20ED%20Manual.pdf. Our research discloses no requirement in the Mental Health Law or other applicable statutes that requires a court hearing be held, or that any court order accompany delivery by a peace officer of a person believed to be in need of treatment before such person is held in temporary detention.
Only after a determination has been made by qualified mental health care professionals at the Detention Facility that the person will require treatment beyond the 72-hour emergency detention period is a petition filed with the district court by the director of the facility or the district attorney for a district court hearing on further detention. 43A O.S. Supp. 2007, § 5-208[43A-5-208](D). However, Section 5-208(A)(3) provides that a "consumer shall be detained in emergency detention for a period not to exceed seventy-two 72 hours . . . except upon a court order authorizing detention pending a hearing on a petition requesting involuntary commitment or treatment." Id. Further, under Section 5-209(A), a person may be detained on an emergency basis for longer than 72 hours based on a court order authorizing further detention. We must then examine the circumstances under which such a court order modifying or eliminating the emergency detention period might be issued.
Under Section 5-410, the following relatives, peace officers or mental health professionals may petition the district court to determine whether a person is mentally ill or a person requiring treatment, and for further order requiring the least restrictive appropriate treatment for the individual:
 1. The father, mother, husband, wife, brother, sister, guardian or child, over the age of eighteen (18) years, of an individual alleged to be a person requiring treatment; *Page 5 
 2. A licensed mental health professional;
 3. The executive director of a facility designated by the Commissioner of Mental Health and Substance Abuse Services as appropriate for emergency detention;
 4. An administrator of a hospital that is approved by the Joint Commission on Accreditation of Healthcare Organizations;[2] provided, however, in any involuntary commitment procedure in which a hospital is the petitioner pursuant to the provisions of this section, the hospital may participate in such hearing without retaining their own legal counsel if the hospital provides as a witness a mental health therapist or a licensed mental health professional;
 5. A person in charge of any correctional institution;
 6. Any peace officer within the county in which the individual alleged to be a person requiring treatment resides or may be found; or
 7. The district attorney in whose district the person resides or may be found.
Id. (footnote added). This statute relating to involuntary commitment is found in a different article of the Mental Health Law, and we conclude that while it is related to and referred to in Sections 5-208(C) and 5-209(A), a petition for involuntary commitment under Section 5-410 isnot the same as an emergency detention, as that term is used in Sections 5-206 — 5-209. For instance, if a family member or private, licensed mental health professional files a petition for involuntary commitment under Section 5-410, law enforcement agencies, peace officers or an administrator of a DMHSAS-approved Detention Facility are not necessarily involved. Further, Section 5-413 provides that a request for prehearing detention may be filed with the involuntary commitment petition, and Section 5-417 provides a partial list of precommitment examination requirements and alternative treatments to be considered by the court. Thus, while a petition must be filed by the administrator of a DMHSAS-approved facility pursuant to Section 5-208(C) if the person is found upon examination to require treatment beyond the statutorily allowed 72 hours, such a petition may also be filed by other persons not involved in the emergency custody and detention procedures of the Mental Health Law.
Moreover, a person in custody as a person in need of treatment under the Mental Health Law has a right, pursuant to Section 1-108 to a writ of habeas corpus upon proper application, as well as other rights provided under Section 5-411 and other applicable laws. But none of these laws contain a requirement that an "emergency order of detention" of a court exists prior to emergency detention. *Page 6 
We agree with the author of the Hildebrant Article that there is no such thing as an "EOD" or emergency order of detention. A petition requesting civil involuntary commitment of a person as one who is mentally ill or requiring mental treatment may request prehearing detention of that person, but such a court order for prehearing detention is not the same thing as an "EOD." *Page 7 
 TRANSPORTATION DUTIES
The statutes relating to responsibility of peace officers to transport persons believed to require mental health treatment are definitive. Section 5-207(B) provides that "[a]ny peace officer who reasonably believes that a person is a person requiring [mental health] treatment," or is drug-or alcohol-dependent to a point that emergency action is necessary, must take that person into custody. Further, "the officer," which we conclude refers to the officer taking the person into protective custody, is required by Section 5-207(D) to immediately transport the person to the nearest DMHSAS-approved facility for emergency examination.
Section 5-207(D) continues: "If, subsequent to an initial assessment, it is determined that emergency detention is warranted, the officer shall transport the person to the nearest facility, designated by the [DMHSAS] as appropriate for such detention. . . ." Id.
Finally, if a person is taken by a peace officer to a DMHSAS-authorized Detention Facility and it is later determined, after examination by a licensed mental health professional, that the person is not mentally ill or drug-or alcohol-dependent to an extent that emergency detention is warranted, "the consumer shall either be returned by an officer immediately to the point where the consumer was taken into protective custody and released or taken to the home or residence of such consumer or to an alternative facility." Id. § 5-208(A)(2) (emphasis added). Section 1-110(A) specifies "[s]heriffs and peace officers shall be responsible for transporting individuals to and from designated sites or facilities for the purpose of examination, emergency detention, protective custody and inpatient services." Id. (emphasis added). While the statute does not specify that the peace officer taking the person into protective custody is the one who must return him or her to safe home territory, we conclude the agency that is responsible for taking a person into protective custody in the first place has a duty to see the person safely home. See Section 1-110(C) that provides:
 The law enforcement agency transporting an individual to and from designated sites or facilities pursuant to the provisions of this section shall maintain responsibility for the transportation of such individual pending completion of the examination, emergency detention, protective custody and inpatient services.
Id. (emphasis added).
By statute, "[n]othing in this [Mental Health Law] shall prohibit a law enforcement agency from entering into a lawful agreement with any other law enforcement agency to fulfill the requirements established by [Section 1-110]" with respect to transportation of persons in protective custody. Id. § 1-110(F). Thus, we conclude that one law enforcement agency might properly enter into an agreement with another law enforcement agency to transport a person from an Assessment Facility or a Detention Facility back to that person's home once it is determined that emergency protective custody is no longer required. *Page 8 
 It is, therefore, the official Opinion of the Attorney Generalthat:
 1. There is no such thing as an "Emergency Detention Order" under Oklahoma law, and no such order is required before a person believed to be in need of mental health treatment can be involuntarily admitted to a hospital or other treatment facility for assessment, temporary detention or treatment. See 43A O.S. 2001 Supp. 2007, §§ 5-206 — 5-209; OKLA. DEP'T OF MENTAL HEALTH SUBSTANCE ABUSE SERV. ("DMHSAS") EMERGENCY DETENTION AND CIVIL COMMITMENT MANUAL 2007 passim (2007) [hereinafter Manual], available at
http://www.odmhsas.org/2007Rules/2007%20ED%20Manual.pdf .
 2. The procedures for emergency custody and detention of a person believed to be in need of mental health care or treatment are found at 43A O.S. 2001 Supp. 2007, §§ 1-110; 5-206 — 5-209; 5-410 — 420; see also Manual, passim.
 3. The peace officer who reasonably believes a person is in need of mental health treatment is responsible for the transportation of that person to and from appropriate care facilities under the Oklahoma Mental Health Law. 43A O.S. Supp. 2007, § 1-110[43A-1-110](A), (C). One law enforcement agency may lawfully enter into an agreement with another law enforcement agency to fulfill the requirements established by this section. Id. § 1-110(F). However, reimbursement of the peace officer or law enforcement agency by DMHSAS is limited to the reimbursement provided for in the State Travel Reimbursement Act (74 O.S. 2001 Supp. 2007, §§ 500.1 B 500.37), and may not include reimbursement for wages or salary of the officer or officers involved. Id. § 1-110(E); see A. G. Opin. 06-29, at 196-97.
W.A. DREW EDMONDSON
ATTORNEY GENERAL OF OKLAHOMA
LYNN C. ROGERS
ASSISTANT ATTORNEY GENERAL
[1] We agree with the recent article in the Oklahoma Bar Journal that there is no longer such a thing as an "EOD" or emergency order of detention. See D. RENEE HILDEBRANT, UNDERSTANDING THE CIVIL INVOLUNTARY COMMITMENT PROCESS, 76 OBJ 421 (2005) [hereinafter "Hildebrant Article"], available at
http://www.okbar.org/obj/articles_05/021205.htm.
[2] An independent, not-for-profit organization. See
http://www.jointcommission.org.